[Civ. No. 16280.   First Dist., Div. One.   June 9, 1955.]

ETHEL H. HILL, Appellant, v. WALTER C. KRAFT et al., Respondents.

Bernal & Bernal and Dick Rockwell for Appellant.

Dyer B. Pierson for Respondents.

WOOD (Fred B.), J.—On June 13, 1947, plaintiff entered into a contract in writing with the defendants for the sale of a house and lot in Berkeley. In September, 1952, she gave defendants a notice of rescission and in February, 1953, filed this action for rescission or damages and for declaratory relief predicated upon asserted defaults by the defendants and allegedly substantial failure of consideration to the plaintiff. From a judgment that she take nothing, plaintiff has appealed.

These are the questions: (1) did the contract obligate defendants to make repairs to the improvements; (2) did the contract obligate the defendants to personally occupy one of the apartments; (3) is the finding that defendants maintained the premises in a neat and orderly condition sustained by the evidence; (4) did the plaintiff tender to the defendants the return of everything of value she received under the contract; (5) did the checks which plaintiff received from defendants after giving notice of rescission, but did not cash, constitute payment of the monthly rentals for which they were tendered?

(1) *The question whether defendants were obligated to make repairs calls for an interpretation of the contract.* In conducting such an inquiry we must bear in mind the cardinal rules that a "contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful" (Civ. Code, § 1636), that the "language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity" (Civ. Code, § 1638), and that when a "contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this title [§§ 1635-1662]" (Civ. Code, § 1639).

Plaintiff promised to convey if defendants pay her $60 a month for 12 years and then make an additional final payment of $2,000.

It was "understood and agreed that the second party [defendant-vendees] shall occupy the upper rear apartment free of rent with water, gas, electricity and garbage bills to be paid by the first party [plaintiff-vendor], and that the rents

of the remaining four apartments shall be retained by the first party until final payments on this contract are made, at which time all further payments of rent will accrue to the second party."

It was "further understood and agreed that the second party [defendants] shall maintain and keep the premises in a neat and orderly condition, including the yard and garden."

It was also "agreed that all taxes and assessments on said property subsequent to the date hereof, to whomsoever assessed, shall be paid by said party of the first part [plaintiff], who shall also keep the buildings on said land insured for at least the sum of Six Thousand Dollars ($6,000.00) payable in case of loss to the said party of the first part, and if any of said sums of taxes, assessments or insurance are not so paid, and are paid by said parties of the second part, the same shall be repaid by said party of the first part on demand, in like Lawful Currency, with interest at the highest rate allowed by law and no deed of said land shall be given until such last named payment shall be made."

█ We observe that there is here no express undertaking upon the part of the defendants to make repairs to the improvements. Plaintiff's retention of possession of all except one apartment and her retention of the rents for the other apartments (four in number), her obligation to pay all taxes and assessments and her promise to pay the water, gas, electricity and garbage bills in respect to the apartment possessed by the defendants furnish no basis for an inference of a promise and a duty upon the part of defendants to repair.*

█ Plaintiff claims defendants' promise to "maintain and keep the premises in a neat and orderly condition, including the yard and garden" includes by necessary implication a promise to make repairs, including major structural repairs. The defendants do not so view it, nor did the trial court, nor do we. The words "neat and orderly condition" suggest a janitorial function which comes far short of an undertaking to replace electric wires, plumbing fixtures, and portions of floors, walls, and foundations. █ However, the language

---

*The needed repairs were substantial in character "including repair of dilapidations to walls, floors and steps, in the approximate sum of $1500.00, painting and decorating in the approximate sum of $600.00, repair of wiring in the approximate sum of $535.00, and plumbing repairs in the approximate sum of $400.00," as found by the court.

is not so clear and explicit as to exclude the possibility of an intent to impose a duty of repair upon the defendant-vendees. In such a situation extrinsic evidence becomes admissible as an aid to interpretation and the construction given the contract by the parties before any controversy had arisen is entitled to great weight as such an aid. (*MacIntyre* v. *Angel*, 109 Cal.App.2d 425, 428-431 [240 P.2d 1047], and cases there reviewed or cited.)

There is evidence that for a period of more than five years the parties treated the duty of repair as that of the plaintiff, not that of the defendants. This contract was negotiated and executed on plaintiff's behalf by her father-in-law acting as her duly authorized agent. He had been managing the property theretofore and continued thereafter to do so until July, 1950, which was shortly before his death in the fall of that year. He made a number of repairs on the building (plumbing and carpentry work), laid linoleum and dug a sewer ditch. He kept the basement locked and had the key. In October, 1949, because of an emergency, defendant Kraft broke the lock and thereafter had access to the basement. Plaintiff contends there is a lack of proof that her father-in-law acted as her agent after the execution of the contract. The court has found that he did so act. The power of attorney which plaintiff executed and acknowledged before a notary in June of 1946 is in evidence. It is a general power and plaintiff in her complaint alleged that he managed the property for her by virtue of this power, not limiting the period of management other than to the period "while plaintiff was residing in the State of Georgia" which commenced prior to the date of the contract of sale and continued for a considerable period of time thereafter. The father-in-law's interpretation of the contract is significant not alone because he continued as plaintiff's managerial agent but also and especially because he negotiated and executed the contract of sale on her behalf.

After his demise, the plaintiff herself for some time evinced the belief that she bore the duty of repair. In January, 1951, she wrote a certain real estate agent in Berkeley, indicating that she was contemplating having an agent to make rent collections from tenants other than the Krafts and "to handle repairs, taxes, utilities, etc." In March of that year, in response to a request from defendant Walter Kraft that plaintiff repair the ceiling and roof over a kitchen, she indicated she had retained the services of this real estate agent

and suggested that Kraft take up with that agent the matter of roof repair.

We conclude that the trial court correctly found that the obligation of repair rested upon the plaintiff, not upon the defendants.*

■ (2) *Did the contract require defendants to personally occupy their apartment?* The trial court properly found that it did not. The agreement that the vendees "shall occupy the upper rear apartment on said premises free of rent" etc. —is an expression more in the nature of a right or privilege than of a duty. The argument that it expressed a duty because of the obligation to keep the premises "in a neat and orderly condition" is not persuasive because the janitorial function was not one which the vendees must personally perform. They could employ other persons to do it, being responsible to the plaintiff for its being properly done. The parties themselves so interpreted the contract. There was evidence that both plaintiff and her agent were aware of a period of time during which the defendants did not live on the premises, subletting their apartment to others who performed on defendants' behalf this janitorial function. Neither plaintiff nor her agent objected to that arrangement.

■ (3) *The finding that defendants maintained the premises in a neat and orderly condition* is supported by substantial evidence.

There was evidence that defendants and their subtenants mowed and watered the lawn, kept the weeds down and generally looked after the yard; that they cleaned the front porch, stairways and halls when necessary, and that the condition of that portion of the premises had improved since they took over the responsibility of maintenance. There was evidence that the garbage situation was unsatisfactory from the accumulation of refuse caused by the insufficient capacity and state of disrepair of the garbage cans. However, plaintiff's agent had assumed the responsibility of removing the

*A word should be said concerning a contention of the plaintiff that defendants in a cross-complaint alleged they had possession of the premises; that plaintiff's answer admitted that allegation; wherefore, any finding inconsistent therewith is necessarily erroneous.

That feature of the pleadings seems to have been ignored at the trial. The contention comes too late upon appeal.

Plaintiff in her complaint pleaded the contract *in haec verba* and defendant admitted its execution. At the trial, as we read the record, the parties treated the question of "possession" as turning upon the proper interpretation of this contract, an attitude necessarily predicated upon an assumption that it was an issue in the case.

garbage and defendants considered that the sole responsibility of plaintiff. The basement was used for the storage of furniture and other articles which the fire inspector deemed a fire hazard, but none of the property in the basement belonged to defendants. Until defendant Kraft broke into the basement it was under the sole control of plaintiff's agent. There was testimony that one of the defendants' subtenants attempted to keep it orderly.

(4) *The finding that plaintiff did not tender back to defendants everything received by her under the contract over and above benefits received by defendants* is supported by the evidence that while the use and occupancy of the apartment assigned to defendants was worth the $60 per month which they paid, it was a fact that they made extensive improvements in that apartment. The value of those improvements and the value of defendants' services in keeping the premises in a neat and orderly condition would seem properly reimbursable. Plaintiff tendered defendants no reimbursement of any kind. Moreover, the lack of cause for rescission renders immaterial the question whether plaintiff made a proper tender.

(5) *The finding that consideration for the contract had been "paid and performed" by the defendants in full to the 17th of September, 1953,* embraced rental payment checks for the period following September 18, 1952 (the date of plaintiff's notice of rescission) which defendants delivered and plaintiff received without objection to the form of the tender, but did not cash.

During the trial plaintiff's counsel directed attention to these checks, saying they were twelve in number, each for $60, received after plaintiff gave her notice of rescission, and that "I am holding the checks, and I am willing to give them to Mr. Pierson [defendants' counsel] or keep them. That was the ordinary method of paying and the tenders were made but not accepted." Defendants' counsel responded: "That may be stipulated."

Plaintiff fears that if she loses any of these checks or if the bank refuses payment because of delayed presentation, the finding that defendants have "paid and performed" will operate as a determination that defendants have paid in cash. No such effect was, of course, intended. If plaintiff had brought this to the attention of the trial court the language of this finding doubtless would have been modified. Accordingly, now that the question has been brought to attention

we insert in that finding clarifying words calculated to assure avoidance of the feared res judicata effect, as the trial judge would have done if it had been brought to his attention.

Finding of Fact No. IX is amended by striking out "1953" and inserting in its place "1952, and was duly and properly tendered thereafter to the 17th day of September, 1953."

The judgment is affirmed; defendants will recover their costs upon this appeal.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied July 8, 1955, and appellant's petition for a hearing by the Supreme Court was denied August 3, 1955.